Haynes, J.
The petition in this case was filed in the court of common pleas of this county for an injunction to restrain the defendant from sinking a certain oil well on a certain piece of land described in the petition.
On the filing of the petition, application was made to the Probate Judge of Wood county for an injunction, and was *382 granted by him. Afterwards the case came on for hearing on the pleadings and the evidence in the court of common pleas. Such proceedings were had there that the court of common pleas dismissed the petition of the plaintiffs, and dissolving the injunction theretofore granted; thereupon an appeal was taken to this court by the plaintiffs, and a motion was filed by the defendant to dissolve the injunction.
The matter was heard by two of the judges of this court at Toledo, and was argued by counsel, and on consideration, the judges were of the opinion that it would be better to allow the injunction to stand until the case could be heard by this court before a full bench, and the case is now before us on the pleadings and the evidence in the case.
The plaintiff, in his petition, sets forth that in the year 1886, on the 23rd of March, one Daniel Hiestand was the owner of certain property described in Wood county, ánd on that date he executed a paper, commonly called an oil lease, to Charles E. Palmer, Wesley Leathers and others, wherein the party of the second part was allowed to sink a well or wells on certain portions of his land for the purpose of developing for oil or gas.
It sets up that afterwards Hiestand brought a suit in the Court of Common Pleas of Wood County, on the 22nd of September, 1887, to cancel said lease, and to enjoin the parties-from operating under it; that an answer was filed, hearing had in the common pleas court, and judgment rendered in favor of the defendants; an appeal was taken from that court to the circuit court, and such proceedings were had in that court that a correction was made in the lease in certain respects, and thereupon a judgment was rendered in favor of the defendants ; that thereupon Daniel Hiestand took that case to the Supreme Court of the state -of Ohio, who afterwards, upon hearing, affirmed the judgment of the circuit court.
That during this time, in connection with that judgment, there had been injunctions and stays of execution, whereby the defendants had been prevented from reaping the fruits that had been rendered in their favor.
*383 Upon a mandate feeing received of the decision of the Supreme Court, the defendants, as they aver, undertook to proceed to operate under the lease; that on the 17th of July, 1889, they entered upon the premises, — on the two acres, and thereupon on the 19th of July, 1889, Hiestand commenced his second action in the court of common pleas and obtained an injunction, and thereupon the court dissolved that injunction, and thereupon said Hiestand appealed said cause to the Circuit Court of Wood County, and thereby reviving and continuing in force the injunction. On the 27th of October, 1891, Hiestand dismissed the petition. On February —, 1892, plaintiff being about to drill a well on said two acres, Hiestand obtained another injunction, and that continued in force until the 26th of March, 1892, when the same was, by order of the court of common pleas, dissolved, and that on the 19th of May the cause was submitted to the court and decided against Hiestand. Thereupon, Hiestand appealed this cause to the circuit court, and in October, 1893, Hiestand dismissed said action. That about the month of May, 1892, at the time the injunction was dissolved, or soon after, plaintiff drilled a well on said two acres under said instrument, and expended about one thousand dollars in so doing, which well produced gas in paying quantities, and plaintiffs are in possession thereof. That Hiestand refused to receive any rental or royalty therefrom.
They also aver that in pursuance of the same provisions of the lease they about four years ago sunk some wells on the adjoining property, at the expense of four thousand dollars, and obtained paying wells. That these wells were drilled so near the land of Hiestand as to demonstrate the fact that oil existed in paying quantities on the lands described in the petition. They then aver they have performed each and every obligation of the contract, and are still ready, able and willing to keep and perform every such obligation on their part to be kept and performed ; that they have been ready to drill *384 on the remainder of the land, and that Hiestand has refused to allow them to do so.
They then aver that on October 21st, 1893, said Hiestand conveyed to the defendant, Albert J. Steel, the following portion of said lands, viz: the south half of the northeast quarter of said section 18, less thirty-one and one-half acres off the east end thereof, and less two and one-half, acres in the northwest corner thereof; the portion so conveyed containing forty-six acres, more or less.
That defendant acquired and took his title to said lands subject to the aforesaid rights of the plaintiffs, and with full knowledge thereof, and of all the matters and things herein-before stated.
That defendant has, nevertheless, entered upon the lands last above described, and erected thereon a derrick, and placed machinery and tools and appliances thereon for the purpose of drilling thereon for oil or gas; and has commenced drilling thereon for the production of oil and gas which underlies said lands in large and valuable quantities.
That he intends to, and will, unless enjoined by the order of this court, proceed to complete said well and' drill other wells on said lands, and remove the oil and gas therefrom, to the great and irreparable damage and injury of the plaintiffs, and to the great and irreparable damage and injury of their aforesaid rights and interests in said lands under the instrument aforesaid.
Now, the lands in question are in the northeast quarter of a certain section, and Daniel Hiestand owns substantially the whole of them. North of the road was the two acres that he had mentioned in this lease to the defendant — the plaintiffs herein — and lying south of the road were the forty-six acres of land which he sold to the defendant Steel, and ’upon which Steel was proceeding to sink a well when he was enjoined, and upon which is based the controversy in question.
Now we come to the lease : The lease was executed on the *385 23rd of March, 1886, and provides that the said first party, for the consideration hereinafter stipulated and agreed upon, does hereby grant to the second party, its successors and assigns, the right to enter upon the following lands and premises now owned by said first party, and situated in Bloom township, Wood county, Ohio, to-wit: A tract of two acres on the following described premises: Being the northeast quarter of section eighteen, less thirty-one and one-half acres off the east end of the south half of the northeast quarter, and two and one-half acres off the west end of the south half of section eighteen. This lease to cover two acres on the southeast corner of the northwest quarter of said section eighteen, for the purpose and with the exclusive right in and upon said premises to drill and develop oil, gas and other valuable substances, and the exclusive right of way to said party of the second part, their successors and assigns, to convey over, upon or through said premises any and all gas, oil and other valuable substances. In consideration whereof it is agreed : “ 1. If oil and gas be found and developed upon said premises in paying quantities, the said first party is to receive as his royalty a one-eighth part thereof at the well, and the said party of the second part agrees to pay the said party of the first part the market value of said one-eighth part of the oil in tank, at well, or gas, when marketed or delivered to a pipeline.” Then follows a stipulation in regard to allowing Hiestand to have the use of gas at his dwelling, and then it proceeds : “ It is further agreed by and between the said parties, their successors and assigns, that this contract and the rights and privileges herein granted and conferred, shall continue and be in force for five years from the date hereof, or so long as oil and gas or other valuable substances be foünd and developed upon said premises in paying quantities.
It is also further agreed, that the said party of the second part, their successors and assigns, shall have the right and privileges of necessary roads to and from all wells and mines' *386 developed on said premises, and the right to remove all machinery, fixtures and buildings placed by them upon said premises.
It is further agreed on the part of the party of the first part, that if oil or gas be obtained by the said party of the second part, or assigns,’under the provisions of thiso contract upon said tract, or upon lands adjoining the same, then the said party of the second part shall have the right to operate the balance of said premises on the same terms as above, providing the party of the first part concludes to have the balance of the above described land operated and developed.
In case said party of the second part, their successors and assigns, shall not commence operations upon said premises within two years from the date thereof, then this contract would be terminated upon sixty days' notice by either party.”
It will be seen that, the two years under this contract would terminate in March, 1888, and the five years would terminate in March, 1891.
It will be perceived that the first well that was actually sunk upon the two acres, was sunk or completed in 1892, more than five years after the expiration of the five years mentioned in the contract.
It is proper, perhaps, to state that the defendants take issue in regard to the allegation of the finding of oil or gas in paying quantities upon the two acres.
The case has been heard upon testimony, and in' the final view we take of the case, we do not deem it very material to pass upon the question as to whether gas or oil has been found in paying quantities. It looks very much as if it had n
It appears that these defendants (plaintiffs herein) had some arrangement with The Northwestern Ohio Natural Gas Company, that if they found oil, it was to be retained, and if they found gas, it was to be turned over or con *387 veyed in some manner to The Northwestern Ohio Natural Gas Company.
It is claimed that the well was sunk, and that gas was found in paying quantities, and it was stated that that well in effect passed into the possession of the Northwestern Ohio Natural Gas Company, and they thereupon sealed it up, and it has remained sealed until the present time, for the reason, perhaps, that it was not convenient or practicable for the company, without considerable expense in laying pipe to make use of it for its purposes.
One thing is very certain, that so far as this land is concerned, that for a period of eight years the property has not been developed. That is owing, in part, to the action of the plaintiff, Hiestand, in the other cases, and in part by the action of the' defendants, or their assignee, The Northwestern Ohio Natural Gas Company.
We are of the opinion, as perhaps we intimated to counsel at the time of the hearing of the motion to dissolve the injunction, that the time during which the injunction was allowed to remain against the defendants, should not be taken into account as against the defendants upon the question as to whether they had been negligent or not in sinking a well. That is, that after the expiration of that time, they should have at least a reasonable time to sink a well and ascertain whether or not oil or gas could be found in paying quantities.
We are of the opinion too, that when a lease of this kind is made, the lease being very strongly in favor of the lessee, so far as the obligation to do or perform within a certain time is concerned, that it is incumbent upon him to take some steps to develop the property. Certainly the lessor, when he made this lease, expected to acquire some income from this property, and the fair intention of parties must be, as it seems to us, that the party of the second part shall take steps to develop the land within the time stated, and that they should continue to develop the property to the end that the party *388 who makes the lease shall reap some benefit of the property.
Rut the ease, in our opinion, does not turn upon that question, and I only mention it incidentally. The real question upon which the case should finally turn, is this : what Mr. Steel, when he bought this property, and when he examined this lease which had been placed upon the records of the county, was bound to know from the lease, and of what it was notice to him.
He has bought the property — and there is no dispute but that he is a purchaser in good faith — and he has proceeded to work upon it as his property. It is claimed that by virtue of this lease, and the record of it, that he had notice of all the rights of the parties who had taken a lease from Daniel Hiestand, and that he was bound, if he wanted to develope the lands which he had purchased, to give to the plaintiffs in this action, Emerine Palmer et al., the right to operate the same upon the terms of the original lease made between Hiestand and those parties.
It will be noticed that the lease in starting out purports to be a lease from Hiestand, the plaintiff herein, audit comes down to the paragraph where it says: “It is further agreed by and between the parties, their successors and assigns, that this contract and the rights and privileges herein granted and conferred, shall continue and be in force for five years from the date hereof, or so long as oil, gas or other valuable substances be found and developed upon said premises in paying quantities.”
That is the first reference that is made to the successors and assigns of either of the parties. There is further along a provision that the parties shall commence operations in a certain time: “It is further agreed on the part of the party of the first part that if oil or gas be obtained by the said party of the second part or assigns, under the provisions of this contract upon said tract or on land adjoining the same, then the said party of the second part shall have the right to *389 operate the balance of said premises on the same terms as above* providing the party of the first part concludes to have the balance of the above described land operated and developed.” There is no provision there in any manner or form of assigns from or under the party of the first part.
It has been said that there has been a conveyance of the oil and gas, under this lease to these parties, but it will be seen that whatever rights they have are conditional, and are conditioned on the fact that the party of the first part shall conclude to have the balance of the lands operated and developed.
Now, the question is, whether or not this option to ;have the land operated or not is binding upon the party who purchases the land of Hiestand, and we have come to the conclusion that it is personal with Hiestand, and it does not bind his successors, and the party who purchased this land from Hiestand took it free from the right on the part of the plaintiffs to operate it so long as Hiestand did not elect to have it operated.
In this case he not only did not elect to have it operated, but he opposed it vie et armis; he did it in the most impressive manner possible, i e. with a pitchfork.
We tkink that option was personal with Hiestand, and did not go beyond him ; that the defendant when he purchased that land was bound to know, and only know that Hiestand had elected, or not elected, to have the land operated under the lease. Hiestand never agreed to keep these lands forever for these parties. This Northwestern Ohio Natural Gas Company is engaged in a business that it is fair to presume will not cease in two, three or many years, and there is nothing to show that they will use the two acres of land for a long period of years, and yet, it seems to be expected that Mr. Hiestand will sit down and hold the property, and allow these parties to close that well, and keep it closed, uutirsuch time as it will suit their pleasure to operate it.
Troup & Dunn, for plaintiffs.
Geo. H. Phelps, for defendant.
We are of the opinion, as a final result of our conclusions, that the defendant, Steel, is entitled to operate this land, and the plaintiffs herein have not the right to enjoin him. It follows that the petition of the plaintiffs herein will be dismissed at the costs of the plaintiff, and judgment will be rendered for the defendants.